670.—W. S. McLean, Testamentary Executor, v. Keegan & McCann and Eugenie Guillaume.

A title to real estate is acquired by thirty years' peaceable and uninterrupted possession as owner.

In a suit for the recovery of real estate on the ground that the title of the possessor is simulated, the plaintiff can not be permitted to treat the title of defendant as a pure simulation, and at the same time urge the sale as real, for the purpose of defeating the plea of prescription.

APPEAL from the Second District Court, parish of Orleans. *Whitaker J. C. B. Singleton* and *E. D. White,* for appellant. *C. Roselius,* for appellee.

LUDELING, C. J. The testamentary executor of John Hagan, the brother and universal legatee of Thomas Hagan, instituted this petitory action to recover from defendant a lot of ground and the buildings thereon situated on Canal street.

Eugenie Guillaume answered that she is the rightful owner and possessor of the property sued for, under and by virtue of the act of sale mentioned in plaintiff's petition, which act is dated the twenty-eighth of June, 1828. That even if the said act were a disguised donation (which, however, is denied), still her title had become valid in law, inasmuch as John Hagan, the universal legatee and only heir of Thomas Hagan, had knowingly, publicly and repeatedly, before and after the death of Thomas Hagan, recognized, given effect to, approved, ratified and confirmed the same, and thus placed it beyond the power of his heirs or executors to attack her title. She also pleaded the prescription of ten and thirty years.

It appears that Thomas Hagan sold to Eugenie Guillaume the property now in dispute, on the twenty-eighth of June, 1828. This is the act which is attacked as a disguised donation to a concubine.

Eugenie Guillaume sold the same property to Thomas Hagan on the seventeenth of April, 1833. On the twenty-second of April of the same year, Hagan sold it to John G. Greeves, who sold it to Nicholas Sinnott on the third of May, 1833; and on the thirteenth of May, 1833, Sinnott sold it to Eugenie Guillaume.

Thomas Hagan died in Paris on the sixth of April, 1850. By his will his brother John Hagan became his universal legatee and sole heir. John Hagan became Eugenie Guillaume's agent for this property before the death of Thomas Hagan; his letters and accounts rendered to her show that as early as 1846 he was her agent, paying taxes and receiving rents on the property. And he continued to act as her agent for the property after the death of Thomas Hagan, up to the period when he left this country, when Mr. John Clay was appointed by him to act for the defendant. In 1851 John Hagan advised the defendant to sell the property.

John Hagan died in September, 1857, in France, leaving a will, whereby he appointed four executors, only one of whom qualified and received letters of executorship.

The conclusion we have reached in regard to the plea of prescription, renders it unnecessary to decide the other questions, which have been learnedly and ably discussed by counsel.

It is alleged in the petition that the sale by James Hagan to the defendant was made on the eighth of June, 1828, and the deed in evidence proves that fact. This suit was instituted on the twenty-ninth day of March, 1860; consequently more than thirty years elapsed between the date of the deed and the institution of this suit. And from the testimony of James Hopkins, a witness for the plaintiff, who was intimate with Thomas Hagan and the defendant, it appears that Eugenio Guillaume and not Thomas Hagan was in possession of the property before they went to Europe. He says: "I know the property alluded to in these proceedings. He (Thomas Hagan) never lived there; his residence was not there. He resided at the corner of Customhouse and Royal streets. Eugenie Guillaume, the person who lived with Thomas Hagan, lived there; she lived there a length of time; she lived there up to the time she went away."

James Puech, a witness for plaintiff, says: "She lived on the property referred to; she was living there until she went away.     *     * Thomas Hagan lived there with her."

Mr. Thomas Clay says: "I always knew her to occupy it (the premises) until she went to France, some twenty-five years before she left."

We conclude from the foregoing and other corroboratory evidence that the defendant had occupied and possessed, as owner, the property in dispute more than thirty years before the institution of this suit.

The plaintiff contends that Thomas Hagan and the defendant resided on the premises at the date of the sale or donation, and continued to reside together until they left for Europe. We think the evidence leaves no ground for a reasonable doubt, that at the time of the sale, the eighteenth of June, 1828, Thomas Hagan did not reside at the house sold. Hopkins says: "He resided at the corner of Customhouse and Royal streets." It is true Puech says: "Hagan lived there with her." But this statement only confirms the testimony of Hopkins. It means at most that he visited her at her residence, and stayed there with her sometimes.

The plaintiff further contends that the prescription only began to run from the death of Thomas Hagan, the sixth of April, 1850; that otherwise a prohibitory law can be violated with impunity, if the donor should live thirty years after the donation. Practically such might be the effect. But it would not result from the prohibited act

of donation, which would remain always null, but simply from the fact of actual and uninterrupted possession, during the time required by law to acquire the ownership. C. C. arts. 3499, 3500; Troplong de la Préscription, vol. 2, Nos. 846, 820; Marcadé, vol. 5, p. 99.

The plaintiff further contends that, granting that the act of June, 1828, transferred the legal possession to the defendant, then the same effect must be given to the act by which the defendant resold the property to Hagan in 1833, causing the prescription to commence its course, *de novo*, from that date; and that the purchase from Sinnott, in 1833, operated an interruption of prescription; that though these acts were not good as sales, because "they were all simulated and tainted with the original vice, they are efficacious as interruptions of prescription." The fallacy of this reasoning is in supposing that in recognizing the defendant's possession, effect is given to the act of sale; whereas it is the fact of the actual possession of the defendant which alone gives her a title.

The plaintiff can not be permitted to allege and treat the acts of sales to and from the defendant as pure simulations, and at the same time claim that they interrupt prescription. If it be conceded that all these sales were simulations, and we disregard them entirely, still we are satisfied from the evidence and the admissions of the plaintiff, that the defendant had been in the actual public and uninterrupted possession of the property, as owner, for more than thirty years, when this suit was brought; and the plea of prescription should be maintained.

It is therefore ordered and adjudged that the judgment of the district court be affirmed with costs of appeal.